Case No. 23-1665 Jeffrey Capen v. Saginaw County, MI et al. Argument not to exceed 15 minutes per side. Mr. Kelly, you may proceed for the appellant. Good afternoon, Your Honors. Kevin Kelly on behalf of the appellant. May it please the court. This appeal is about two pretty straightforward questions. One, does a public employee, just as a convicted criminal would, have a constitutionally protected liberty interest in refusing... Why just as a convicted criminal would? Because I think the analogy to convicted criminals is very important. I think because if you look in the prison jail setting... Where people are confined against their will. Right. And there's been usually an adjudication that they've done something wrong. Those individuals still have a protected constitutional liberty interest in refusing medical treatment. We've got a problem here in that there was no medical treatment being proposed, just an evaluation. But that's not the case. The evaluation, not only was there an examination which involved a clinical interview, application of tests. There was a diagnosis. There was a treatment plan created. There was a suggestion that Mr. Capen undergo a neuropsychological evaluation and individual counseling. I don't see anything about him being required to participate in a treatment plan. What are you talking about in terms of a treatment plan? That was the treatment plan that was recommended to Saginaw County that he undergo a neuropsychological evaluation.  What's the point of treatment? Isn't it to get diagnosed and to figure out what's going on with an individual? Well, you can evaluate a person without subjecting them necessarily to medical treatment, I would think, especially if there's an issue of workplace safety and that kind of a thing. What is the liberty interest against medical treatment? Is that the one and only interest or liberty interest that you are presenting on behalf of your client in this case? Yes, it's the liberty interest in medical treatment, medical care, medical attention. It has been referred to in multiple different terms across the different courts from the United States to different circuits. And that's the whole thing. How can you say there's no treatment when they have a treatment plan? I mean, that's, I think, a logical thing. How can you have a treatment plan without treatment? What's your best case to support the idea that there is a clearly established constitutional right not to have your employer require that you submit to an evaluation, medical or psychological? What's your best case on that? Yeah, I don't think that there's exactly an analogous situation. I think it is a matter of... So how do we get around the requirement that it be clearly established? One, for the municipal claim, it doesn't need to be clearly established. It's only for qualified... Of course, first of all, for the municipal claim, there's got to actually be the violation. So let's get back to the right that you're claiming. But clearly established is only for qualified immunity under Mr. Bowman. So the issue there is not necessarily, do we need to show a case directly on point? No, the case law says we don't. And here, the principles are clearly established that you do have a right to refuse treatment and medical care. That's been recognized for decades. It goes back to the common law. Do you have a right to do that and maintain the employment relationship, which is what you're starting from here? Yes, and let me clarify that because there's confusion, which I think has been propagated by the appellee about a distinction between a substantive due process issue and a procedural due process issue. We are not arguing that a municipal government never has the ability to subject somebody to a medical evaluation, examination, treatment. What we are saying is only you need to have some type of procedural protection in place before you do that. And that bar might be exceedingly low. There was the actual psychological exam that your client did participate in. Are you saying that that's where there was a lack of procedural due process, or is it later on? Both. There's a lack of procedural due process when he goes to the psychological evaluation. So he was called in to the boss, and the boss gives him two letters and says, we're going to require you to have a psychological exam, and it's set for tomorrow. Am I right? It was a little bit later, but yes, that's the basic premise that, yes, you are going to have a psychological evaluation on this date. And so then he went ahead with it. So that's the thing. Can they do that? Because think about it here. This is not some esoteric, faraway concern. We're in a room full of public servants. And the judges, you might be in a little bit different situation, but there's public employees here. And so you're going to say, can the government just make one of these employees undergo psychological evaluation and treatment? In certain circumstances, sure. Yeah, if they do something wrong, there might be all sorts of different cases. An incredible threat. Yes, and so that might have given them a legitimate basis to do so. But they still need to have some type of procedure in place, because what's the point of procedural due process? It's to check against that there's some type of arbitrary deprivation. You're saying they should have followed. Something. It has to be something. So we have all these cases that say the bare minimum is to give notice to the employee. There was the notice that his boss called him in. But there wasn't a notice of what he did that justified why did they want the exam. You had a conversation with a coworker a month ago. You can't remember every conversation you had a month ago. It doesn't give you any notice. The letters that were given by the boss when he called in your client. Did they not provide adequate notice? No, because the only statement, there's no allegation or notice as to what he did wrong. The only time we learned about the threat after we filed the state law claim and he had to get discovery, he got the threat from them. When they tell him to go to psychological evaluation, he has no idea why. All they tell him is, okay, on November 18th, you had a conversation with a coworker. So we're going to send you to a psychological evaluation. That's the concern here. He did know that on November 18th, he had had a conversation that was then being reported to the boss. What that conversation was, he didn't know. How many conversations does a given employee have in a day? And you don't identify the coworker? Would your client have asked for some kind of a hearing before showing up the next day for the first psychological exam? Through what procedure? There wasn't any procedure in place. And that's what I think, if you look at, it's called the right to reply hearing. Where you just tell the person, this is before you terminate a public employee with a property interest in continuing employment. You say, here's our allegations against you, here's the evidence, here's your opportunity to reply. How simple would that have been for Mr. Bellman to say, well, I have you sitting here, this is what was said happening, what's your response? Okay, I don't buy it, we're sending you to a psychiatric exam. And that would have satisfied the bare minimum requirements of due process. No employee who's suspected of being a problem or a threat in the workplace can be called in for an evaluation unless there's a developed procedural plan pertaining to that in-house case. That's going to be handled with steps and prior notice and standards of proof set forth and all like that. If the employer doesn't have that, he can't do anything. Is that what you're telling me? I'm not going that far, because I'm not saying, I don't think you have to get into what is the exact contours of what the due process requires. I'm not saying it requires a full-blown hearing or anything. It could be as simple as a conversation. I think that's the analogy to the other context where there is protection and procedures in place. You see cases where a criminal or somebody with mental disabilities, we're going to have a panel evaluate should the person have this treatment and the person can appear before him. Well, what was your client's liberty interest? You keep saying he couldn't be evaluated. What constitutionally recognized liberty interest are you making reference to and what's the legal authority for that? I think it goes back to the Supreme Court cases, the Sixth Circuit cases that are cited in my brief that say you cannot force a person for unwanted treatment. Now, there's limitations. That's not an absolute right. You can force a person for unwanted treatment, but you don't have to continue his employment either. Well, that's fine. They could have, if they said, hey, we want to discipline you for this, fine, they had every right to. If they want, he would have been able to grieve that then, but they chose not to. Yeah, but I'm still trying to find out what the nature of the liberty interest is. You can't just vaguely or ambiguously say that you can't force a person to be treated or evaluated and that's the end of the discussion. But that's what the case law says is that you have to. You haven't given us a case that says exactly that at all. Let me ask you one other thing. You keep talking about the evaluation and medical treatment and things like that, but that's not what your client was following. Your client was filed for refusing to attend a meeting to discuss a reasonable accommodation. And he refused to go to that meeting. He was told he would be let go if he didn't come to the meeting. So he was fired for not going to that meeting. At least that's what the record shows, not for these prior things about a medical evaluation. The only place that says that is in the police arguments. If you look at the note that my client actually received, it says you had a psychological evaluation, you were required to go to a neuropsychological evaluation, you were required to give us all of your medical records, and they had an accommodations meeting for the neurological disorder that my client didn't have. So, sorry, he didn't want to participate in that while we had litigation against him. That's a pretext from the county. Well, no, it was put in writing to your client that if he didn't come to the meeting, his job would be, he would be subject to termination. Right, he's being coerced into undergoing further medical treatment. Well, no, it didn't say medical treatment. I'm sorry, Your Honor, I will disagree. It said he had to come to the meeting to discuss reasonable accommodations with respect to his employment. It didn't say anything about treatment. I know, but I'm looking at what's the actual notice for his termination that lists the reasons for why he's terminated. And it says for all the above reasons, which include his non-attendance at the different medical evaluations. But then your client was told that the employer thought that he should get a pre-termination hearing. So they wanted him to come in, and they were going to afford him the opportunity for that. And he refused to participate in that as well. But again, that's, yeah, after they gave him the first notice of termination, they realized, oh, we screwed up. We didn't give you a pre-deprivation hearing for your termination. So another violation of his rights. And so we're going to take the termination back. You can have a hearing, and then we'll terminate you. Why isn't that curing the problem? Because they realized themselves that a pre-termination hearing was appropriate. But that's not what this case is about. It's not about whether there was sufficient due process before or after his termination. It's about, is he owed any due process before he's supposed to be required to go to a psychological evaluation, disclose all sorts of information about him, his family members, his medical history, all because of someone making a baseless complaint that he sat on for a month. You know, I mean, that's not what this case is about. That all goes to damages, termination, what flowed from the denial of his due process. Here you have, can you force someone to undergo, a public employee, to undergo medical treatment, evaluation, care, and I'm sorry if your honors disagree that having to appear before a psychiatrist and be interviewed and have tests applied and be diagnosed and told you have an adjustment disorder, depression and anxiety, that that's not medical treatment, then we have a fundamental disagreement and I guess I lose. But I think that is treatment. And all we are suggesting is that before you force someone to go do that, you have to give them some type of notice and opportunity, something. Thank you. Good afternoon, your honors. Kevin Campbell on behalf of the appellees, Robert Bellman and Saginaw County. Your honors, I just have several brief remarks. First of all, I think that the issue before the court properly framed is whether or not a employee has a liberty interest to resist or refuse a bona fide fitness for duty evaluation when the employee's ability to perform his or her job functions is clearly in question. There is no, to Judge Clay's point, I've researched this issue ad nauseum and found no case law in this circuit or any other circuit that suggests that an employee has a liberty interest to resist, a mandated fitness for duty evaluation when that employee's ability to safely perform his or her job functions is at issue. And in fact... Isn't there a potential problem that another disgruntled employee who doesn't like that particular individual can make a false statement about a threat, and that under your position there would be no liberty interest of the accused individual to resist having a psychological interview testing exam? Well, I think that this goes really to the due process issue. And I think I respectfully disagree with Brother Counsel on the point that in this case, the counties did in fact provide him, him being Mr. Capon, all the process that was due him. Before the first exam... Yes. The process that was provided, as I understand it, was he was called into his boss's office and told that there had been a... You fill in. He was told that there was a complaint against him and that he needed to go the next day for a psychological testing. Am I correct? That is absolutely correct. And at that point in time, Your Honor, respectfully, Mr. Capon had an opportunity to give his version of events. I didn't make any threat. This is all nonsense. Moreover, the union, the bargaining unit, was notified of this step. The bargaining unit could have filed a grievance, could have issued an information request. That machinery could have gone into action. So what exactly did the boss say? This is Bellman, right? Correct. Did he say there was a complaint filed against you that suggested that you were threatening other people in the office? My understanding is that is exactly what he said, is that we have a report that you threatened violence in the workplace. And I think that Brother Counsel's concern is that Mr. Bellman did not share that report, the written document prepared by Mr. Cooper. He did not share with him at that point in time that report. Now, the investigation was ongoing at that point in time. I don't know of the steps that the county was taking in reference to this particular issue. I also, to take a step back, if I may just stress, Mr. Bellman requested the fitness for duty evaluation and was urged to take it seriously at the advice of the undersheriff, the county undersheriff. So it's not as if Mr. Bellman willy-nilly said, you know what, this is a good time to dig into his medical history and blah, blah, blah. I mean, he went to the undersheriff from the county who said, yeah, take it seriously and have this man sit for an evaluation. And then he met with him, explained generally that a threat had been reported. And at that point in time, Mr. Capon had ample opportunity to present his side of the story and, frankly, to get his union involved. And do we know whether he attempted to get the union involved at that point? I think the record is unclear on that point, Your Honor. The union was notified, though. I think that's unequivocally established. And this court, under far less compelling facts in Sullivan v. River School District, confirmed that a fitness for duty evaluation is a legitimate discretionary requirement that an employer can impose when the employee's fitness for duty is in genuine dispute. Because there is no liberty interest here, and certainly because it's not clearly established, the court correctly found that Defendant Bellman was entitled to qualified immunity, and there was no Monell liability. I'd like to... There could be Monell liability if the only reason is that the right was not clearly established on the individual qualified immunity basis. In other words, there can be a constitutional violation, but it can perhaps not be clearly established, in which case the individual would get qualified immunity, but the city or town or whatever would not be able to escape from Monell liability. Correct. I misspoke, I think properly stated. Our position here is that there is no deprivation of the liberty interest. There was no deprivation, and he was given all the due process that he was required to be given. But if I may just digress, the argument here on appeal, and that I think Brother Counsel really stressed in his argument, is really a misframing of the issue. This IME was not medical treatment. And in fact, in Dr. Zaroff's report, nothing in that report purported to establish a psychologist-patient relationship. Moreover, in the report, it's identified as confidential and for the benefit exclusively of the county. Under Michigan law, to the extent it's relevant here, an independent medical examination has very limited purpose. A traditional physician-patient relationship is not established by virtue of the fact that it's for a very limited purpose, for employment reasons or for litigation reasons. So if he had refused to have the evaluation, the first evaluation that actually occurred, would he have been terminated for refusing it? That's unclear to me. I mean, clearly, what I can say, Your Honor, respectfully, is that I think the record is very clear that the county bent over backwards for this gentleman. Even after the second, excuse me, after Dr. Zaroff recommended, indicated that this gentleman, this threat should be taken seriously. And recommended a neuropsychological evaluation, and Mr. Capon refused to attend. The county didn't terminate him then. By inference then, I would argue then that they probably wouldn't have terminated him after the, if he failed to show for Dr. Zaroff's evaluation. But again, respectfully, as the appellee's position, this was not medical treatment. And really, this whole argument turns on a, with all due respect, a mischaracterization of what this liberty interest is. The county did not compel Mr. Capon to take or ingest psychotropic drugs. The county did not compel him, compel his hospitalization. There's nothing in the record to suggest that the county had any concerns about who was going to be treated. Who were you treating with, how, what medications he was taking, any of that. This was the only, the record is very clear that the only concern that the county had was, is this man fit for duty. And I would respectfully disagree with brother counsel on his assertion that there was a plan of care involved in Dr. Zaroff's treatment. Didn't Dr. Zaroff recommend some form of counseling, i.e. psychiatric treatment? Well, I think, yeah, Dr. Zaroff suggested that further counseling might be appropriate. There's no evidence in the record that the county imposed that as a condition of his employment and required him to go to counseling. Maybe it would have been a good idea under the circumstances for Mr. Capon to do that. But it certainly wasn't placed as a condition on his employment. It was not made as a requirement. What was the stated reason for termination when he was finally actually terminated? Job abandonment. And they promised the job abandonment on? The failure to appear, Mr. Capon was required to appear, I think eight months after all of this started, was required to appear to work, at work, and participate in an accommodations interactive process meeting. He failed to show. And moreover, in that correspondence to Mr. Capon, the county indicated your failure to attend will be deemed and construed as job abandonment. And he was on paid leave that entire time? Correct, the entire time. So unless the court has any additional questions for me, I think I've covered everything that I'd like to cover. If I may briefly respond. I'd just say, please look at the record carefully, because what was said during the meeting was not that. He had no idea what conversation was being talked about with Mr. Bellman. And that's, I think, an important point. Was there police, any psychological evaluation Mr. Bellman seen across the desk from him one-on-one? So was it really a serious threat? No, because, I mean, you'd have to be crazy to do that, right? Mr. Bellman, I might have criticism, but he's not that dumb. He wouldn't sit across the table from someone that threatened to kill him and that they really thought that that threat was serious. The other thing, they were not concerned just with his fitness for duty, because we know from the county's civil attorney, the letter that he wrote to Dr. Zaroff, he says there's a rumor he has MS or brain lesions. And so what is that except guidance to go dig for information about his potential disability? So those things are wrong. He did notify, the union was involved. And Mr. Capon testified that the union told him there was nothing they could do for him. So he couldn't grieve it. He was told if you don't, in the letter that he was sent or given to by Mr. Bellman, he was told if you do not cooperate in the psychological evaluation, your leave of absence, which the other letter notified him he was on a leave of absence, would be converted to an unpaid leave. Okay, so did they investigate anything? No. He called the undersheriff. The undersheriff didn't investigate anything. All they did was have the civil attorney call the psychiatrist, psychologist. And so yes, what this comes down to is what's the liberty interest? And that's what I just would think. Sometimes it's better to say it in the opposite. For instance, if you had a clerk, two clerks, and one says, hey, they said something that violated a work rule to me. And you told the clerk that's being accused, well, you had a conversation a month ago where you violated a work rule. So now we're going to subject you to psychological evaluation. And to say that there's no liberty interest is to say the Constitution is completely silent in that situation. And I don't think that's the case. The government can't force me to undergo an examination. The government couldn't come in and say, we need to psychologically examine you. You know, hey, we didn't like the arguments you were making. And so there you go. But if you are an employee, you're saying the government has no ability without violating the Constitution, if it has concerns about something about you, to have you evaluated? Absolutely not. What I'm saying is they can have legitimate concerns, and you can test those. Just give them the bare minimum due process before you do it. Meet with them, tell them why you're doing it, give them an opportunity to respond. And you know what, if they want to ignore it, fine, they can. That satisfies the Constitutional requirement, the very limited check against arbitrary decisions, because that's exactly what this was here. It's an arbitrary decision where you have somebody who's known to make incredible stories. He's a storyteller, he's a liar. The people that he says will corroborate him did not. There's factual inconsistencies, and to be honest, it sounds like a fifth grader wrote that letter. It sounds made up. So you have them not taking any precaution. Well, that's an assault. That might be an act of terrorism. There's no police investigation. We're not even going to ask him what happened. We're just going to send him to a psychologist, and if he doesn't go, he's fired. There's absolutely no protection for all public employees when situations like this happen. I can't believe that that's the case. I don't think the case law supports that. And the mere fact that someone didn't put these principles together and make this argument before doesn't change how those principles act and what they stand for. If you're going to take away somebody's liberty interest, you have to give them an opportunity to respond to why you're doing it. And that wasn't done, and that violated Mr. Capon's constitutional rights. And he should be able to go have a trial on some of these factual issues as to whether they told him he was going to be fired or why they fired him. That would all be issues for the jury as to what damages flow from the deprivation. But there was no pre-deprivation process at all, and that's not constitutionally sufficient. Thank you both for your argument, and the case will be submitted.